ing the employé before the end of his term of employment, the employé may recover all the damages which the evidence shows he has sustained to the end of the term, although the term of employment may not have ended at the time of the trial. An action for wrongful discharge includes every element of damage arising from the discharge. The action is indivisible, and one recovery is a bar to any further action for damages. McCargo v. Jergens, 206 N. Y. 363, 372, 99 N. E. 838.

The judgment and order should be affirmed, with costs. All concur.

---

(172 App. Div. 775)

### LENTSCH v. INTERNATIONAL RY. CO.

(Supreme Court, Appellate Division, Fourth Department. April 19, 1916.)

1. STREET RAILROADS ⬳99(13)—INJURIES ON TRACKS—CONTRIBUTORY NEGLIGENCE.

Where the driver of a wagon went upon a street car track at a point where the car has a paramount right of way, without looking for approaching cars, he is guilty of negligence, unless it appears that looking would be of no avail.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §. 215; Dec. Dig. ⬳99(13).]

2. APPEAL AND ERROR ⬳216(1)—REVIEW—EXCEPTIONS—NECESSITY FOR REQUEST FOR CHARGE.

An exception to an erroneous charge is sufficient, without requesting a ruling on a definite request to charge upon the subject.

[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. ⬳216(1); Trial, Cent. Dig. §§ 627, 628, 629, 637.]

3. APPEAL AND ERROR ⬳882(12)—PARTIES ENTITLED TO ALLEGED ERROR—INVITED ERROR.

A party may not complain of an erroneous instruction given at its request.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3602; Dec. Dig. ⬳882(12).]

Appeal from Trial Term, Erie County.

Action by Joseph A. Lentsch against the International Railway Company. From a judgment for plaintiff, and from an order denying a motion for new trial, defendant appeals. Reversed, and new trial ordered.

Argued before KRUSE, P. J., and FOOTE, LAMBERT, MERRELL, and DE ANGELIS, JJ.

Dana L. Spring, of Buffalo, for appellant.
W. J. Wetherbee, of Buffalo, for respondent.

DE ANGELIS, J. The plaintiff recovered damages for personal injuries sustained in being thrown from a wagon by the collision of one of defendant's street cars with the wagon. Defendant operates a double-track surface railroad in Niagara street in the city of Buffalo. The plaintiff was sitting on the front seat of a wagon, loaded with window frames, drawn by a single horse driven by him north-

---

⬳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

erly on Niagara street. The load made by the window frames was about 13 or 14 feet in length, 10 feet in width, and high enough so that the plaintiff could not see the railroad tracks behind the wagon without standing. Both vehicles were moving northerly. At a point about the middle of the block northerly from Albany street a stake wagon loaded with lumber was standing between the easterly track and the easterly curb, the team of horses attached to which wagon were headed northerly. In order to pass this stake wagon plaintiff drove onto the easterly track and while his wagon was in the pathway of the car, the car collided with the rear of the plaintiff's wagon, he was thrown upon the pavement, his horse ran away, his feet got tangled in the reins, and he was dragged some distance.

The plaintiff's proof tended to show that he arose from his seat and looked to the south (where the view along the tracks was unobstructed for a distance of 1,000 feet) before he turned onto the easterly track, and he saw no car approaching. Some of the witnesses called by the plaintiff testified that when he turned upon the railroad track the car was approaching him rapidly some 300 or 400 feet away. Plaintiff's testimony further tended to show that his horse was passing from the railroad track when the collision occurred.

The defendant's proof tended to show that the plaintiff did not look for the approaching car, drove in front of the approaching car when it was so close to him that the motorman, although he did his best, could not stop the car in time to prevent a collision, and the motorman's affidavit, introduced by the defendant by consent, was to the effect that the plaintiff drove onto the track in the pathway of the car when the car was only 30 feet away from him.

This being the state of the case, the court in the body of the charge said:

"It is the duty of any person coming upon such a track to use reasonable care to see that it is safe for him to do so, and reasonable care is such care that a person of ordinary prudence, the everyday man who uses ordinary care for himself, would use for his own safety. He cannot go on blindly, and take the chance, and lose, and then complain successfully in a court. If he looks, he is held responsible for knowing what was within the field of vision when he looked, because there is no impairment of eyesight, no claim here but what his eyes were normal and of average strength and accuracy. Therefore it becomes important in this case to know at what point he did look, if he looked at all, *and if he did not look at all he was negligent*, because he is chargeable if he looked with what was in sight. What is the distance, then, within which this car would have been visible? Was there an obstacle, as shown by the evidence here, between the wagon and the approaching car? There is no evidence here that there was. Therefore, if he looked, you must find he saw the car where it was at the time he looked. Then the question should arise whether it was reasonably prudent under such conditions to attempt to approach the track, so as to be within striking distance of the car as it came on. If it was not, he would be negligent. If he is negligent, and that negligence contributed or helped bring upon him the injury, under the law in the state of New York he has no cause of action, and the defendant is entitled to a verdict as a matter of right."

The counsel for the plaintiff took an exception to the charge as follows:

"I except to that portion of your honor's charge in which you said the plaintiff was guilty of contributory negligence unless he looked. I think that is a matter of fact."

The court thereupon said:

"I leave it to the jury to say whether a person of reasonable prudence could go on a track, with notice from the tracks being there, without looking, and be free from negligence. I will leave that to the jury."

The counsel for the defendant took an exception to this ruling.

[1, 2] We think the ruling of the learned trial judge was fatal to the verdict. He should have said that, before driving into the fixed pathway of the street cars (especially in the middle of the block, where the right of way of the street cars is paramount to that of other vehicles), it was the duty of the plaintiff to look for approaching cars unless the evidence was such as to show that looking would be of no avail. Knapp v. Barrett, 216 N. Y. 226, 230, 110 N. E. 428. It was not necessary that the counsel for the defendant should have gone further, and asked for a ruling on a definite request to charge upon the subject. Freund v. Paten, 10 Abb. N. C. 311, 316.

[3] It is true that the learned trial judge charged later, at the request of the counsel for the defendant, that if the jury found that the plaintiff started to turn his horse from the path of safety outside the street car track into the path of danger when the street car was approaching within 50 feet of him, the verdict must be "No cause of action." But we do not think this was any modification of the ruling complained of, as we shall now attempt to show. Assuming that the car was running at the rate of 15 miles an hour, which perhaps is less than its actual speed, it ran 22 feet in a second. The plaintiff states that his horse was going at a slow walk, say 3 miles an hour, or 6 feet a second. In such case the car would run 50 feet in about 2¼ seconds, and the horse would take over 8 seconds to cover that distance. The proposition of the court was that, if the plaintiff turned his horse onto the track when the car was 50 feet away (whether the plaintiff looked for the approaching car or not), he would have been negligent. Whether that was a correct exposition of the law or not, the defendant had the benefit of it and cannot complain. Still the jury might have found that the car was 60 feet away when the plaintiff turned upon the track, and in that case the court's instruction left the jury to say that, if they found that the plaintiff did not look for the approaching car, they might find as a fact, nevertheless, that he was free from negligence. Just where the court would have drawn the line is problematical. As was said in the Knapp Case:

"A wayfarer is not at liberty to close his eyes in crossing a city street. His duty is to use his eyes, and thus protect himself from danger. * * * The law does not say how often he must look, or precisely how far, or when, or from where. If, for example, he looks as he starts to cross, and the way seems clear, he is not bound as a matter of law to look again. The law does not even say that, because he sees a wagon approaching, he must stop till it has passed. He may go forward unless it is close upon him, and whether he is negligent in going forward will be a question for the jury. If he has used his eyes, and has miscalculated the danger, he may still be free from fault. * * * But it is a very different thing to say that he is not bound to look at all."

It must be remembered that the court was dealing with the situation where the rights of the plaintiff, a pedestrian, and those of the owner of the wagon, were equal, while in the case under consideration the

car had the paramount right of way. Certainly if the plaintiff started to drive onto the track when the car was 60 feet away, it could not be said that his looking would have been of no avail, and therefore the court would have been compelled to charge that, if he failed to look for the approaching car, he would have been guilty of negligence as a matter of law.

We think that the judgment and order appealed from should be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.